UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

OLIVIA SUARES,                                    )
                                                  )        **AMENDED COMPLAINT**
                              Plaintiffs,         )
                                                  )        **JURY TRIAL DEMANDED**
        -against-                                 )
                                                  )        19 Civ. 5832 (KPF)
THE CITY OF NEW YORK; SERGEANT "FNU"              )
[First Name Unknown] FLORES; POLICE               )
OFFICER MATTHEW CANIGLIA; POLICE                  )
LIEUTENANT MICHAEL BOPP; RETIRED                  )
LIEUTENANT NICOLAS CHABERT;                       )
DETECTIVE JASON BAKER; DETECTIVE                  )
ANDRE SMITH, Shield No. 6269; DETECTIVE           )
MICHAEL DISKIN; POLICE SERGEANT                   )
MARIA VELIZ; POLICE OFFICER LEE RUBIN;            )
POLICE OFFICER NOEL ESCOTO; POLICE                )
OFFICER JEURI PAULINO; POLICE OFFICER             )
JUAN BURGOS; DETECTIVE "FNU" [first name          )
unknown] HENNESSY; DETECTIVE "FNU"                )
RIVERA; POLICE OFFICER "FNU" NAPOLI;              )
POLICE DETECTIVE JORGE MERGECHE;                  )
POLICE SERGEANT JESUS FREYTES; POLICE             )
OFFICER ANDREW HEIDANUS; POLICE                   )
SERGEANT "FNU" NICHOLS; POLICE                    )
DETECTIVE DARRELL JULIEN; POLICE                  )
SERGEANT "FNU" ROBERTS; POLICE                    )
DETECTIVE "FNU" BRENNAN; POLICE                   )
DETECTIVE SCOTT PATTERSON;ASSISTANT               )
DISTRICT ATTORNEY MEGHAN A. HORTON;               )
ASSISTANT DISTRICT ATTORNEY "FNU"                 )
ZARCONE; BRONX DISTRICT ATTORNEY'S                )
OFFICE DETECTIVE INVESTIGATOR                     )
CLAYTON NYONYO; JOHN DOES and                     )
RICHARD ROES,                                     )
                                                  )
                              Defendants.         )

-----------------------------------------------------------------X

1

## PRELIMINARY STATEMENT

1.      This is a civil action in which the plaintiff seeks relief for the defendants'
violation of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983; by the
United States Constitution, including its Fourth and Fourteenth Amendments and by the laws and
Constitution of the State of New York.  The plaintiff seeks damages, both compensatory and
punitive, affirmative and equitable relief, an award of costs and attorneys' fees, and such other
and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including
its Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.  Jurisdiction is
conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this
being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

## JURY TRIAL DEMANDED

3.      Plaintiff demands a trial by jury on each and every one of her claims as pleaded
herein.

## VENUE

4.      Venue is proper for the United States District Court for the Southern District of
New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## NOTICE OF CLAIM

5.      Plaintiff filed Notices of Claim with the Comptroller of the City of New York on
April 4, 2018 and on December 10, 2018.  Plaintiff further filed a Notice of Claim with the
Comptroller of the City of New York on January 16, 2020, stemming from the dismissal of the
criminal charges against her and her claim for malicious prosecution.  More than 30 days have

elapsed since service of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## PARTIES

6.      Plaintiffs OLIVIA SUARES at all times relevant herein was a resident of the State of New York, Bronx County.  Plaintiff is African-American, of Dominican heritage.

7.      Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.  Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.      Defendants SERGEANT "FNU" [First Name Unknown] FLORES; POLICE OFFICER MATTHEW CANIGLIA; POLICE LIEUTENANT MICHAEL BOPP ; RETIRED LIEUTENANT NICOLAS CHABERT; DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; POLICE OFFICER LEE RUBIN; POLICE OFFICER NOEL  ESCOTO; POLICE OFFICER JEURI PAULINO; POLICE OFFICER  JUAN BURGOS; DETECTIVE "FNU" HENNESSY; DETECTIVE "FNU" RIVERA; POLICE OFFICER "FNU" NAPOLI; POLICE DETECTIVE JORGE MERGECHE; POLICE SERGEANT JESUS FREYTES; POLICE OFFICER ANDREW HEIDANUS; POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL JULIEN; POLICE SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU" BRENNAN; POLICE DETECTIVE SCOTT PATTERSON; ASSISTANT

DISTRICT ATTORNEY MEGHAN A. HORTON; ASSISTANT DISTRICT ATTORNEY

"FNU" ZARCONE; BRONX DISTRICT ATTORNEY'S OFFICE DETECTIVE

INVESTIGATOR CLAYTON NYONYO ; [1] and JOHN DOES are and were at all times relevant

herein duly appointed and acting officers, servants, employees and agents of THE CITY OF

NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of

defendant THE CITY OF NEW YORK, and / or the Bronx District Attorney's Office, the

employees of which are paid by THE CITY OF NEW YORK.  Defendants are and were at all

times relevant herein acting under color of state law in the course and scope of their duties and

functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK,

were acting for, and on behalf of, and with the power and authority vested in them by THE CITY

OF NEW YORK and the New York City Police Department and / or the Bronx District

Attorney's Office, and were otherwise performing and engaging in conduct incidental to the

performance of their lawful functions in the course of their duties.  Defendants SERGEANT

"FNU" [First Name Unknown] FLORES; POLICE OFFICER MATTHEW CANIGLIA;

POLICE LIEUTENANT MICHAEL BOPP; RETIRED LIEUTENANT NICOLAS CHABERT;

DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE

MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; POLICE OFFICER LEE RUBIN;

POLICE OFFICER NOEL  ESCOTO; POLICE OFFICER JEURI PAULINO; POLICE

OFFICER  JUAN BURGOS; DETECTIVE "FNU" HENNESSY; DETECTIVE "FNU"

RIVERA; POLICE OFFICER "FNU" NAPOLI; POLICE DETECTIVE JORGE MERGECHE;

POLICE SERGEANT JESUS FREYTES; POLICE OFFICER ANDREW HEIDANUS;

POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL JULIEN; POLICE

---

1 The spelling of the Defendants' names may not be accurate.

SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU" BRENNAN; POLICE

DETECTIVE SCOTT PATTERSON; ASSISTANT DISTRICT ATTORNEY MEGHAN A.

HORTON; ASSISTANT DISTRICT ATTORNEY "FNU" ZARCONE; BRONX DISTRICT

ATTORNEY'S OFFICE DETECTIVE INVESTIGATOR CLAYTON NYONYO; and JOHN

DOES are sued individually.

9.       Defendants SERGEANT "FNU" [First Name Unknown] FLORES; POLICE

LIEUTENANT MICHAEL BOPP; RETIRED LIEUTENANT NICOLAS CHABERT;

DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE

MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; DETECTIVE "FNU"

HENNESSY; DETECTIVE "FNU" RIVERA; POLICE DETECTIVE JORGE MERGECHE;

POLICE SERGEANT JESUS FREYTES; POLICE OFFICER ANDREW HEIDANUS;

POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL JULIEN; POLICE

SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU" BRENNAN; POLICE

DETECTIVE SCOTT PATTERSON; ASSISTANT DISTRICT ATTORNEY MEGHAN A.

HORTON; ASSISTANT DISTRICT ATTORNEY "FNU" ZARCONE; BRONX DISTRICT

ATTORNEY'S OFFICE DETECTIVE INVESTIGATOR CLAYTON NYONYO; and

RICHARD ROES are and were at all times relevant herein duly appointed and acting

supervisory officers, servants, employees and agents of THE CITY OF NEW YORK and/or the

New York City Police Department and/or the Bronx District Attorney's Office, responsible for

the training, retention, supervision, discipline and control of subordinate members of the police

department and/or  Bronx District Attorney's Office under their command.  Defendants are and

were at all times relevant herein acting under color of state law in the course and scope of their

duties and functions as supervisory officers, agents, servants, and employees of defendant THE

CITY OF NEW YORK and/or  Bronx District Attorney's Office, were acting for, and on behalf

of, and with the power and authority vested in them by THE CITY OF NEW YORK and the

New York City Police Department and/or  Bronx District Attorney's Office, and were otherwise

performing and engaging in conduct incidental to the performance of their lawful functions in the

course of their duties.  Defendants SERGEANT "FNU" [First Name Unknown] FLORES;

POLICE LIEUTENANT MICHAEL BOPP; RETIRED LIEUTENANT NICOLAS CHABERT;

DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE

MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; DETECTIVE "FNU"

HENNESSY; DETECTIVE "FNU" RIVERA; POLICE DETECTIVE JORGE MERGECHE;

POLICE SERGEANT JESUS FREYTES; POLICE OFFICER ANDREW HEIDANUS;

POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL JULIEN; POLICE

SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU" BRENNAN; POLICE

DETECTIVE SCOTT PATTERSON; ASSISTANT DISTRICT ATTORNEY MEGHAN A.

HORTON; ASSISTANT DISTRICT ATTORNEY "FNU" ZARCONE; BRONX DISTRICT

ATTORNEY'S OFFICE DETECTIVE INVESTIGATOR CLAYTON NYONYO; and

RICHARD ROES are sued individually.

## STATEMENT OF FACTS

10.     On Friday, March 23, 2018, approximately 4:30 a.m., Plaintiff was asleep inside

of her home at 1315 Sheridan Avenue., Apt. #31 B, Bronx, NY.

11.     Plaintiff's apartment is located on the fourth floor of the building, and is a one

bedroom apartment.

12.     Plaintiff was asleep in the living room of the apartment, which she also used as

her bedroom.

6

13.     Plaintiff's daughter, and her daughter's boyfriend, used the bedroom as their sleeping quarters, and were also home at the time.

14.     Plaintiff was awoken by banging on her door.

15.     After Plaintiff spoke with Plaintiff's daughter's boyfriend, Plaintiff went over to the door and asked "who?" [i.e., who is there].

16.     A voice responded that it was the police.

17.     Plaintiff then opened the door.

18.     As soon as Plaintiff opened the door a large number of JOHN DOES members of the NYPD - on information and belief including some or all of SERGEANT "FNU" [First Name Unknown] FLORES; POLICE OFFICER MATTHEW CANIGLIA; POLICE LIEUTENANT MICHAEL BOPP ; RETIRED LIEUTENANT NICOLAS CHABERT; DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; POLICE OFFICER LEE RUBIN; POLICE OFFICER NOEL ESCOTO; POLICE OFFICER JEURI PAULINO; POLICE OFFICER  JUAN BURGOS; DETECTIVE "FNU" HENNESSY; POLICE OFFICER "FNU" NAPOLI; POLICE DETECTIVE JORGE MERGECHE; POLICE SERGEANT JESUS FREYTES; POLICE OFFICER ANDREW HEIDANUS; POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL JULIEN; POLICE SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU" BRENNAN; and POLICE DETECTIVE SCOTT PATTERSON - rushed in to Plaintiff's apartment.

19.     Some of the JOHN DOES were in uniform, and some were not.

20.     Neither Plaintiff, nor the other people present in her apartment, gave the JOHN DOES consent to enter her apartment, and the JOHN DOES never asked for consent before

7

rushing into Plaintiff's apartment without permission.

21.     The JOHN DOES were asking if Plaintiff heard any gunshots from her home, and telling Plaintiff that someone had gotten shot in an apartment located under her apartment from the bedroom of her home.

22.     Plaintiff responded that she had not heard any gunshot, and that there were not any guns in her house.

23.     There had not been any gunshot emanating from Plaintiff's apartment.

24.     The JOHN DOES officers then entered the bedroom of Plaintiff's apartment, without the consent of Plaintiff (or of the others present in the apartment).

25.     Plaintiff's daughter's boyfriend was in bed in the bedroom.

26.     The JOHN DOES did not speak with him, however.

27.     Plaintiff's daughter also entered the bedroom.

28.     Plaintiff told the JOHN DOES over and over again that there were no guns in her home.

29.     The JOHN DOES kept falsely insisting that a bullet had emanated from Plaintiff's apartment, and struck someone in an apartment below.

30.     JOHN DOES left, and then returned to (possibly including other JOHN DOES), Plaintiff's apartment.

31.     JOHN DOES returned to Plaintiff's apartment even though any exigent circumstances that, *arguendo*, existed for their initial warrantless entry had evaporated through their initial search, which did not yield any firearm.

32.     After being in Plaintiff's apartment for approximately 30-45 minutes, one of the JOHN DOES - on information and belief of the rank of Lieutenant, on information and belief

LIEUTENANT CHABERT - told Plaintiff and her daughter that they were going to be brought to the police precinct for questioning.

33.     Plaintiff was told this in a peremptory manner, and compliance was not optional.

34.     LIEUTENANT CHABERT also falsely told Plaintiff that there was a bullet hole through the floor of her apartment.

35.     There was no bullet hole in Plaintiff's floor, however.

36.     LIEUTENANT CHABERT pointed out an area of Plaintiff's floor that had scuff marks and / or drill marks on it, but no bullet hole, and no holes of any sort that went all the way through the floor.

37.     Defendants JULIEN and ROBERTS were present in Plaintiff's apartment along with LIEUTENANT CHABERT.

38.     At one point DETECTIVE DISKIN asked Plaintiff to tell him that the alleged incident was an accident.

39.     Plaintiff repeatedly refused to state this since no gun had been fired in her apartment.

40.     Plaintiff and her daughter were brought to the NYPD 44th Precinct for questioning.

41.     Plaintiff's daughter's boyfriend was handcuffed and formally arrested and booked.

42.     One of the JOHN DOES showed Plaintiff four bullets in a plastic container that the police claim were found in Plaintiff's apartment.

43.     If in fact there were any bullets found in Plaintiff's apartment, they were not in plain view, and there was no reason to believe that Plaintiff would have known that they were

9

there.

44.     An NYPD property invoice states that the bullets were found by the police in the bedroom shared by Plaintiff's daughter and her boyfriend, "IN THE BOTTOM OF A THREE-PARTITION HAMPER (RIGHT-MOST PARTITION)" in a Rubbermaid container.

45.     The JOHN DOES never claimed to have found a gun in Plaintiff's apartment.

46.     Plaintiff was held by the JOHN DOES that morning at the 44th Precinct for approximately two hours – from approximately 6 a.m. to 8 a.m. - during which time she was questioned and wrote out a statement for the JOHN DOES, and during which time the JOHN DOES kept falsely insisting that a bullet had emanated from Plaintiff's apartment.

47.     Plaintiff was questioned that morning at the precinct by POLICE DETECTIVE "FNU" BRENNAN and POLICE DETECTIVE SCOTT PATTERSON.

48.     After being held at the 44th Precinct for approximately two hours, the JOHN DOES permitted Plaintiff (as well as Plaintiff's daughter) to leave.

49.     Plaintiff's daughter's boyfriend was arrested by the NYPD and charged by the Bronx District Attorney's Office for the shooting that the individual Defendants claimed emanated from Plaintiff's apartment.

50.     The "Details" section on Plaintiff's daughter's boyfriend's arrest report states that Plaintiff's daughter's boyfriend "DID DISCHARGE A FIREARM IN HIS APARTMENT FLOOR, CAUSING A BULLET TO ENTER THE APARTMENT BELOW, STRIKING THE C/V IN THE BACK.  BULLETTS WERE RECOVERED FROM THE DEFENDANT'S ROOM."

51.     Defendant HEIDANUS is listed on the NYPD Complaint reports as the "Reporting / Investigating M.O.S. [member of service]."

52.     The Complaint reports state, inter alia, that on 3/23/18 there was a "(CONFERRAL) DETECTIVE BUREAU – SQUAD."

53.     When Plaintiff got back to her apartment, JOHN DOES members of the NYPD were still present in her apartment.

54.     The JOHN DOES told Plaintiff that she would not be permitted to enter her apartment unless she signed a permission to search form.

55.     Plaintiff pointed out that JOHN DOES members of the NYPD were already inside of her apartment.

56.     The JOHN DOES told Plaintiff that she would be refused entrance to her apartment until Monday, when they would get a judge to sign a document, unless she signed the form.

57.     Despite Plaintiff's vocal objections to the JOHN DOES being in her apartment, Claimant was compelled under duress to sign the consent form in order to re-enter her apartment.

58.     According to Defendant LEE's memo book, Defendant NICHOLS requested that Defendant LEE and other JOHN DOES members of the NYPD return to Plaintiff's apartment at approximately 11 a.m., and Defendant LEE and other JOHN DOES members of the NYPD did so.

59.     Later that evening, at approximately 6 p.m., Plaintiff's daughter received a phone call – on information and belief from DETECTIVE ANDRE SMITH - instructing her to come back down to the 44th Precinct for further questioning.

60.     Plaintiff went back to the 44th precinct with her daughter for moral support.

61.     DETECTIVE "FNU" HENNESSY and DETECTIVE ANDRE SMITH questioned Plaintiff and her daughter that evening at the 44th Precinct, and video-recorded

11

Plaintiff's statements.

62.     DETECTIVE "FNU" HENNESSY and DETECTIVE SMITH asked about the non-existent hole they claim to have found in the floor of the bedroom in Plaintiff's apartment.

63.     After being questioned by DETECTIVE "FNU" HENNESSY and DETECTIVE SMITH for some time that evening, Plaintiff and her daughter were then again permitted to leave the precinct.

64.     The "Monitoring Investigator" for those interrogations was Defendant MERGECHE, and the supervisor for those interrogations was Defendant FREYTES.

65.     Plaintiff's daughter's boyfriend was questioned by Defendant SMITH and Defendant BAKER.

66.     The "Monitoring Investigator" for that interrogation was Defendant NAPOLI, and the supervisor for that interrogation was Defendant BOPP.

67.     NYPD records state that all of Defendants NAPOLI, SMITH, MERGECHE, and FREYTES were present at the scene.

68.     When Plaintiff was questioned by the Defendant members of the NYPD as set forth *supra*, she at no point was informed of her <u>Miranda</u> rights.

69.     Defendant JULIEN and Defendant CHABERT took / collected photos on the date of the incident in both Plaintiff's apartment and in the apartment below.

70.     The photos taken of Plaintiff's floor show scuff and other marks, but no holes that go through to the floor below.

71.     Additionally, there are photos of more than one hole in the ceiling of the apartment below Plaintiff's (i.e., the photos of the ceiling hole taken by Defendant JULIEN and Defendant CHABERT are of different holes).

72.     On information and belief, the individual Defendants never inserted any probe into either Plaintiff's floor or the ceiling of the apartment below, to see if any hole existed connecting the apartments through the floor / ceiling.

73.     No hole existed connecting the apartments through the floor / ceiling.

74.     Additionally, the NYPD's records indicate that the wife of the man who was shot told the police that while she was sleeping next to her husband she "heard a large boom noise."

75.     However, as per NYPD records, members of the NYPD interviewed numerous neighbors – including from the apartment directly above Plaintiff's apartment, from the apartment next door to Plaintiff's apartment, and from another apartment on the floor below Plaintiff's apartment – and none of those neighbors heard anything like a gunshot.

76.     Neither did Plaintiff, Plaintiff's daughter, or Plaintiff's daughter's boyfriend hear anything like a gunshot.

77.     Plaintiff had, on information and belief, received a subpoena from the Bronx District Attorney's office that, on information and belief, purported to require her testimony before a grand jury on August 16, 2018, which Plaintiff believed was in relation to the arrest of Plaintiff's daughter's boyfriend on March 23, 2018.

78.     When Plaintiff arrived at the location stated on the subpoena on August 16, 2018, however, she was duped by three JOHN DOES employees of the Bronx District Attorney's office, on information and belief including Defendant NYONYO, Defendant ADA HORTON, and ADA ZARCONE, into giving an audio and video recorded statement.

79.     On information and belief, since Plaintiff did not provide the three JOHN DOES employees of the Bronx District Attorney's office, on information and belief including Defendant NYONYO, Defendant ADA HORTON, and Defendant ADA ZARCONE, with

information on August 16, 2018 that would help them in prosecuting Plaintiff's daughter's boyfriend, they decided to wrongfully seek Plaintiff's indictment and procure her arrest based upon that indictment based upon false and misleading information provided by the NYPD Defendants, knowing that Plaintiff had committed no crime, solely in order to increase pressure upon Plaintiff's daughter's boyfriend in their prosecution of him.

80.     On August 24, 2018, Plaintiff was indicted stemming from the alleged shooting incident described *supra*, based upon evidence that was fabricated by the JOHN DOES members of the NYPD.

81.     Plaintiff was wrongfully charged in the indictment with Criminal Possession of a Firearm, Assault in the Second Degree, Reckless Endangerment in the First Degree, Reckless Endangerment in the Second Degree, Assault in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree, and Possession of Ammunition.

82.     On September 12, 2018, at approximately 6 a.m., Plaintiff was wrongfully arrested at her home by JOHN DOES (on information and belief members of the NYPD Warrants Squad), on information and belief based upon the indictment (the first time she became aware that she had been indicted), and held initially at the NYPD 44th Precinct.

83.     Plaintiff was questioned at the precinct by Defendants RIVERA and BAKER.

84.     Plaintiff was then brought at approximately noon to Bronx Central Booking, and held there until September 13, 2018 at approximately 4:30 p.m., when she was arraigned and released upon her own recognizance.

85.     Those indictment charges against Plaintiff were dismissed on January 8, 2020.

86.     On information and belief, all of the individual Defendants participated directly in the violation of Plaintiff's rights, either by, *inter alia*, unlawfully entering, searching, remaining

14

in, and / or denying Plaintiff access to her home unless she signed a consent to search form under duress, and / or by coercing and / or tricking Plaintiff into giving statements, and / or in falsely arresting and imprisoning and / or fabricating evidence against and / or wrongfully prosecuting Plaintiff, and / or conspiring with each other to accomplish same.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

87.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

88.     By their conduct and actions in falsely arresting and imprisoning plaintiff, trespassing upon plaintiff and her home, unlawfully searching of plaintiff's home, violating rights to equal protection of, violating rights to due process of plaintiff (including fabricating evidence), wrongfully prosecuting plaintiff, invading plaintiff's privacy and dignity, conspiring against plaintiff, failing to intercede on behalf of the plaintiff and in failing to protect the plaintiff from the unjustified and unconstitutional treatment she received at the hands of other defendants, Defendants SERGEANT "FNU" [First Name Unknown] FLORES; POLICE OFFICER MATTHEW CANIGLIA; POLICE OFFICER LIEUTENANT BOPP; RETIRED LIEUTENANT NICOLAS CHABERT; DETECTIVE JASON BAKER; DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE MICHAEL DISKIN; POLICE SERGEANT MARIA VELIZ; POLICE OFFICER LEE RUBIN; POLICE OFFICER NOEL  ESCOTO; POLICE OFFICER JEURI PAULINO; POLICE OFFICER  JUAN BURGOS; DETECTIVE "FNU" HENNESSY; DETECTIVE "FNU" RIVERA; POLICE OFFICER "FNU" NAPOLI; POLICE DETECTIVE JORGE MERGECHE; POLICE SERGEANT JESUS FREYTES; POLICE

OFFICER ANDREW HEIDANUS; POLICE SERGEANT "FNU" NICHOLS; POLICE

DETECTIVE DARRELL JULIEN; POLICE SERGEANT "FNU" ROBERTS; POLICE

DETECTIVE "FNU" BRENNAN; POLICE DETECTIVE SCOTT PATTERSON; ASSISTANT

DISTRICT ATTORNEY MEGHAN A. HORTON; ASSISTANT DISTRICT ATTORNEY

"FNU" ZARCONE; BRONX DISTRICT ATTORNEY'S OFFICE DETECTIVE

INVESTIGATOR CLAYTON NYONYO; JOHN DOES; and/or RICHARD ROES, acting under

color of law and without lawful justification, intentionally, maliciously, and with a deliberate

indifference to or a reckless disregard for the natural and probable consequences of their acts,

caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42

U.S.C. §1983 and the United States Constitution, including its Fourth and Fourteenth

amendments.

89.     As a result of the foregoing, plaintiff was deprived of her liberty and property,

experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

expenses, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVATION OF RIGHTS UNDER THE
## UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

90.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

91.     By their conduct in failing to remedy the wrongs committed by their subordinates

and in failing to properly train, supervise, or discipline their subordinates, supervisory defendants

SERGEANT "FNU" [First Name Unknown] FLORES; POLICE OFFICER LIEUTENANT

BOPP; RETIRED LIEUTENANT NICOLAS CHABERT; DETECTIVE JASON BAKER;

DETECTIVE ANDRE SMITH, Shield No. 6269; DETECTIVE MICHAEL DISKIN; POLICE

SERGEANT MARIA VELIZ; DETECTIVE "FNU" HENNESSY; DETECTIVE "FNU"

RIVERA; POLICE DETECTIVE JORGE MERGECHE; POLICE SERGEANT JESUS

FREYTES; POLICE SERGEANT "FNU" NICHOLS; POLICE DETECTIVE DARRELL

JULIEN; POLICE SERGEANT "FNU" ROBERTS; POLICE DETECTIVE "FNU"

BRENNAN; POLICE DETECTIVE SCOTT PATTERSON; ASSISTANT DISTRICT

ATTORNEY MEGHAN A. HORTON; ASSISTANT DISTRICT ATTORNEY "FNU"

ZARCONE; BRONX DISTRICT ATTORNEY'S OFFICE DETECTIVE INVESTIGATOR

CLAYTON NYONYO; and/or RICHARD ROES caused damage and injury in violation of

plaintiff's rights guaranteed under 42 U.S.C. §1983 and the United States Constitution, including

its Fourth and Fourteenth amendments.

92.     As a result of the foregoing, plaintiff was deprived of her liberty and property,

experienced pain and suffering, psychological and emotional injury, great humiliation, costs and

expenses, and was otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF DEFENDANT THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

93.     The plaintiff incorporates by reference the allegations set forth in all previous

Paragraphs as if fully set forth herein.

94.     At all times material to this complaint, defendant THE CITY OF NEW YORK,

acting through its police department and through the Bronx District Attorney's office, and

through the individual defendants had de facto policies, practices, customs and usages which

were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department and through the Bronx District Attorney's office, and through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

96.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the Bronx District Attorney's office, and through the individual defendants, had de facto policies, practices, customs and/or usages of encouraging and/or tacitly sanctioning the cover-up of other law enforcement officers' misconduct, through the fabrication of false accounts and evidence and/or through "the blue wall of silence."  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

97.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the Bronx District Attorney's office, and through the individual defendants, had de facto policies, practices, customs and/or usages of engaging in illegal and harassing raids and arrests, particularly upon people of Hispanic or African-American ethnicity, and of failing to properly train, supervise or discipline police supervisors and subordinate officers concerning same.  Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

98.     At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the Bronx District Attorney's office,

18

and through the individual defendants, had de facto policies, practices, customs and/or usages of abusing grand jury subpoenas for improper investigatory purposes (including duping the recipients of grand jury subpoenas into giving statements to the District Attorney's office when they responded to the grand jury subpoenas), and of failing to properly train, supervise or discipline its police supervisors, subordinate officers, Assistant District Attorneys, Detective Investigators, and other District Attorney's Office concerning same. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

99.   At all times material to this complaint, the defendant THE CITY OF NEW YORK, acting through its police department and through the Bronx District Attorney's office, and through the individual defendants, had de facto policies, practices, customs and/or usages of improperly bringing charges based upon false and misleading information against the family members and friends of their actual targets, in order to increase pressure and leverage upon their actual targets during the course of the prosecution of their actual targets, and of failing to properly train, supervise or discipline its police supervisors, subordinate officers, Assistant District Attorneys, Detective Investigators, and other District Attorney's Office staff concerning same. Such policies, practices, customs and/or usages are a direct and proximate cause of the unconstitutional conduct alleged herein.

100.   By implementing, enforcing, encouraging, sanctioning and/or ratifying these policies, practices, and/or customs, defendant the CITY OF NEW YORK caused the Plaintiff to lose her privacy, dignity, and liberty, and deprived her of her property, without due process of law, in violation of her rights guaranteed to every citizen of the United States by the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

101.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FOURTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS

102.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

103.    The conduct of the individual defendants alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers / supervisors, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

104.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT

105.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

106.    By the actions described above, defendants caused plaintiff to be falsely arrested and imprisoned, without reasonable or probable cause, illegally and without a warrant, and

without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

107.   As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW

108.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

109.   By the actions described above, defendants violated plaintiff's rights to equal protection of law.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

110.   As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM

### TRESPASS

111.   The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

112.   The defendants willfully, wrongfully and unlawfully trespassed upon the home and person of plaintiff.

21

113.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

114.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

115.    By the actions described above, defendants engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally and/or negligently caused emotional distress to plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

116.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## NINTH CLAIM

### NEGLIGENCE

117.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

118.    The defendants, jointly and severally, negligently caused injuries, emotional distress and damage to the plaintiff.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

22

119.     As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

120.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

121.     Defendants THE CITY OF NEW YORK negligently hired, screened, retained, supervised and trained defendants.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

122.     As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## ELEVENTH CLAIM

### CONSTITUTIONAL TORT

123.     The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

124.     Defendants, acting under color of law, violated plaintiffs' rights pursuant to Article I, §§ 6, 11 and 12 of the New York State Constitution.

125.     A damages remedy here is necessary to effectuate the purposes of §§ 6, 11 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

126.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## TWELFTH CLAIM

### MALICIOUS PROSECUTION

127.    The plaintiff incorporates by reference the allegations set forth in all previous Paragraphs as if fully set forth herein.

128.    By the actions described above, defendants maliciously prosecuted plaintiff NELSON without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

129.    As a result of the foregoing, plaintiff was deprived of her liberty and property, experienced pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

    a.  Compensatory damages;

    b.  Punitive damages;

    c.  The convening and empaneling of a jury to consider the merits of the claims herein;

    d.  Costs and interest and attorney's fees;

    e.  Such other and further relief as this court may deem appropriate and equitable.

24

Dated:      New York, New York
             August 13, 2021

                                _____/S/_____
                                JEFFREY A. ROTHMAN, Esq.
                                Law Office of Jeffrey A. Rothman
                                305 Broadway, Suite 100
                                New York, New York 10007
                                (212) 227-2980

                                Attorney for Plaintiff